**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE INTERCEPT MEDIA, INC., *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:26-cv-6867 |

**DECLARATION OF DAVID BRALOW (THE INTERCEPT)**

I, David Bralow, General Counsel for The Intercept Media, Inc., declare as follows:

1. I submit this declaration in support of the motion for injunctive relief filed by The Intercept and the Freedom of the Press Foundation. I make this declaration based on my personal knowledge and thorough consultation with my colleagues at The Intercept.
2. The Intercept is a nonprofit investigative news organization that, since it first began publishing in 2012, focuses on exposing corruption and perceived injustices. It primarily focuses on national news, critically covering the President and other government officials.
3. The Intercept or its editors and reporters have received many awards for their reporting, including the George Polk award for its reporting on the disclosures of Edward Snowden, and the Edward R. Murrow Award for reporting on Arizona's illegal dumping of shipping containers as an ad hoc border barrier on protected public lands, among other accolades.
4. The Intercept is supported through donations.
5. The Intercept regularly reports both on the fact of President Trump's newsworthy public statements and on the broader implications and fallout of those statements. Because

President Trump routinely makes statements and announcements on his Truth Social account that are not released simultaneously by President Trump or the government anywhere else, The Intercept frequently reports on statements from President Trump made exclusively on Truth Social.

6. As of August 28, 2026, The Intercept referenced Truth Social in dozens of articles.
7. In covering President Trump, The Intercept not only engages in traditional journalism in the form of articles and news reports; it and its reporters also maintain social media accounts to instantly report and comment on notable events as they happen.
8. In conducting these activities, timeliness matters: speedy, accurate reporting increases the impact and visibility of The Intercept's reporting, which drives The Intercept's reader traffic. The same is true on social media, where the ability to report and comment quickly leads to increased views and followers. These increased impacts, in turn, drive subscriptions and donations and make it easier for Intercept reporters to cultivate news sources, allowing the Intercept to continue its non-profit reporting mission.
9. Until August 1, 2026, The Intercept had the same access to President Trump's Truth Social account as the general public. Because Truth Social posts can be viewed without a Truth Social account, The Intercept has not made one.
10. Based on publicly available information, I understand that on August 1, 2026, Trump Media and Technology Group ("Trump Media") launched an application programming interface ("API") called "Truth API" that sells faster access to President Trump's Truth Social posts to those willing to pay $100,000 per month or $720,000 annually.
11. Trump Media's CEO has stated that API access will be "significantly" faster than traditional methods of access, even automated ones.

12. Based on publicly available information, I understand that at least a dozen clients have already subscribed to Truth API since its launch on August 1, 2026, and that Trump Media is in talks with large news organizations about subscribing as part of a larger effort to market Truth API to news organizations.

13. The Intercept has not subscribed to Truth API.

14. The Intercept is unwilling to subscribe to Truth API, either as an organization or on behalf of its reporters. Financially supporting the President's private business, and thus subsidizing Truth Social's speech and specific viewpoint, would harm its reputation for fairness and objectivity, which would reduce The Intercept's readership, revenue, and ability to cultivate news sources. The Intercept also generally disagrees with Truth Social's speech and specific viewpoint.

15. The Intercept is also unable to subscribe to Truth API because it cannot afford the exorbitant cost of a subscription.

16. The Intercept has already been harmed and imminently faces further harm from Defendants' actions.

17. Because President Trump routinely posts newsworthy information on Truth Social first—and often exclusively—The Intercept's reporting can only be as timely as our reporters' access to that newsworthy information.

18. Because The Intercept cannot subscribe to Truth API, it impairs The Intercept's efforts to effectively report, comment, and analyze on the statements that President Trump makes first and exclusively on Truth Social. Those news organizations that subscribe to Truth API will receive those statements faster than The Intercept can, giving them an advantage in reporting and commenting on the news through traditional channels and on social media.

That impairment will increase as Trump Media markets and adapts Truth API to the needs of news organizations that are willing and able to pay Truth API's exorbitant subscription fees.

19. The Truth API scheme thus forces The Intercept to make a choice: either subsidize and associate with the President's private company, harming The Intercept's finances and reputation, or risk losing out on reporting timely news to competing organizations, similarly harming its reputation and revenue.

20. The Intercept can and will develop code to process a machine-readable feed to access President Trump's Truth Social posts on an API if it becomes freely available.

I declare under penalty of perjury as prescribed in 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on August 29, 2026, in New Jersey.



______________________________

David Bralow